IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GARY P. LIGHTMAN, ESQUIRE, | : | |
| and | : | |
| LIGHTMAN & MANOCHI | : | |
| 1520 Locust Street, 12th Floor | : | |
| Philadelphia, PA  19102-4401 | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| JEROME M. MARCUS, ESQUIRE, | : | Civil Action No. _____ |
| JONATHAN AUERBACH, ESQUIRE, | : | |
| and | : | |
| MARCUS & AUERBACH LLC | : | |
| 400 Greenwood Avenue, Suite 200 | : | |
| Wyncote, PA 19095 | : | |
| | : | |
| and | : | |
| | : | |
| BERGER & MONTAGUE, P.C. | : | |
| 1622 Locust Street | : | |
| Philadelphia, PA  19103-6365, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER

Upon consideration of Defendants Jerome Marcus, Jonathan Auerbach, and Marcus & Auerbach LLC's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, and the Court having determined that granting the relief requested in the Motion is appropriate, and after due deliberation and sufficient cause appearing therefore; it is hereby ORDERED that:

The Motion to Dismiss the Complaint is GRANTED and the Complaint is dismissed with Prejudice.

_____              _____
                                     Hon. J. Mary McLaughlin

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GARY P. LIGHTMAN, ESQUIRE, | : | |
| and | : | |
| LIGHTMAN & MANOCHI | : | |
| 1520 Locust Street, 12th Floor | : | |
| Philadelphia, PA  19102-4401 | : | |
| | : | |
|    Plaintiffs, | : | |
| | : | |
|   v. | : | |
| | : | |
| JEROME M. MARCUS, ESQUIRE, | : | Civil Action No. _____ |
| JONATHAN AUERBACH, ESQUIRE, | : | |
| and | : | |
| MARCUS & AUERBACH LLC | : | |
| 400 Greenwood Avenue, Suite 200 | : | |
| Wyncote, PA  19095 | : | |
| | : | |
|   and | : | |
| | : | |
| BERGER & MONTAGUE, P.C. | : | |
| 1622 Locust Street | : | |
| Philadelphia, PA  19103-6365, | : | |
| | : | |
|   Defendants. | : | |

## DEFENDANTS' MOTION TO DISMISS TO THE COMPLAINT, OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT

For the reasons outlined in the memorandum of law filed herewith, Defendants

Jerome Marcus, Jonathan Auerbach, and Marcus & Auerbach LLC ("M&A Defendants")

hereby move to dismiss Plaintiffs' Complaint in its entirety with prejudice.  In the

alternative, the M&A Defendants move for summary judgment as to all counts in the

Plaintiffs' Complaint.


Respectfully Submitted,

Dated: January 4, 2012              /s/ Mark B. Sheppard
                                    Mark B. Sheppard, Esq.
                                    Pa. Atty. I.D. No. 50480
                                    MONTGOMERY, MCCRACKEN,
                                        WALKER & RHOADS, LLP
                                    123 South Broad Street
                                    Philadelphia, PA 19109-1099
                                    Tel: 215-772-1500
                                    msheppard@mmwr.com

                                    *Attorney for Defendants*
                                    JEROME M. MARCUS, ESQUIRE,
                                    JONATHAN AUERBACH, ESQUIRE, and
                                    MARCUS & AUERBACH LLC

## CERTIFICATE OF SERVICE

I, Mark B. Sheppard, hereby certify that I caused a true and correct copy of the

foregoing of Motion to Dismiss or in the Alternative, Motion for Summary Judgment, to

be served this date via E-mail upon the following:

GARY P. LIGHTMAN, ESQUIRE
LIGHTMAN & MANOCHI
1520 Locust Street, 12th Floor
Philadelphia, PA  19102-4401
(215) 545-3000
garyplightman@lightmanlaw.com


H. LADDIE MONTAGUE, JR., ESQUIRE
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103-6365
(215) 875-3010
hlmontague@bm.net


/s/ Mark B. Sheppard
Mark B. Sheppard


Dated: 1-9-12


-3-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARY P. LIGHTMAN, ESQUIRE,<br>and<br>LIGHTMAN & MANOCHI<br>1520 Locust Street, 12th Floor<br>Philadelphia, PA  19102-4401<br><br>        Plaintiffs,<br><br>    v.<br><br>JEROME M. MARCUS, ESQUIRE,<br>JONATHAN AUERBACH, ESQUIRE,<br>and<br>MARCUS & AUERBACH LLC<br>400 Greenwood Avenue, Suite 200<br>Wyncote, PA  19095<br><br>   and<br><br>BERGER & MONTAGUE, P.C.<br>1622 Locust Street<br>Philadelphia, PA  19103-6365,<br><br>      Defendants. | Civil Action No. _____ |

## MEMORANDUM IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS OR, IN THE ALTERNATIVE,
## MOTION FOR SUMMARY JUDGMENT

Defendants Marcus, Auerbach and Marcus & Auerbach LLC, (collectively the

"M&A Defendants") and the co-lead counsel to the class herein move to dismiss the

Complaint because Plaintiffs have failed to plausibly state a claim for relief.

Plaintiffs are a disgruntled attorney and his law firm. They bring this suit despite

acknowledging that Plaintiffs were paid and despite the fact that Plaintiffs cannot

reasonably dispute that the amount paid was in accordance with the plain and

unambiguous terms of the October 27, 2009 Agreement ("Fee Agreement") attached to Plaintiffs' Complaint as Exhibit B. They also bring this suit despite this Court's Order vesting sole discretion as to the allocation of those legal fees in the M&A Defendants. As such, Plaintiffs cannot plausibly plead an alleged breach of that same agreement.

The acknowledged existence of and reliance upon the Fee Agreement is also fatal to Plaintiffs' claims for unjust enrichment and quantum meruit, as it is axiomatic that there can be no such equitable claims where a written agreement binds the parties. Moreover, the M & A Defendants cannot have been be unjustly enriched where they have at all times complied with the discretion vested in them by this Court's Order approving of the class action settlement and legal fees to be paid thereto. Lastly, Plaintiffs' demand for an accounting must be dismissed because Plaintiffs were long ago provided with one.

Alternatively, the M & A Defendants move for summary judgment because there can be no disputed issue of material fact. The terms of the fully integrated Fee Agreement between the parties were clear. Further, as set forth in the attached Declaration and exhibits, Plaintiffs cannot reasonably dispute that they were fully paid in accordance with its terms.

## I.    FACTUAL BACKGROUND

This case is arises out of dispute of legal fees awarded under the Court's Final Order in *In Re: American Investors Life Insurance Co. Annuity Marketing and Sales Practices Litigation*, MDL No.1712 (E.D. Pa.).[1] A copy of the Court's Order is attached hereto as Exhibit A. Despite the fact that Plaintiffs received a negotiated portion of the

---

[1] Plaintiffs incorporated the Final Order into their Complaint by reference at ¶ 31 but failed to attach a copy to their Complaint.

attorneys' fees awarded in that case and in accordance with the Fee Agreement between Plaintiffs and the M & A Defendants, Plaintiffs now demand additional payment.

The Court's Final Order in MDL 1712 entitled Defendants to allocate fees in an amount that, "in the opinion and sole discretion of Co-Lead Counsel, fairly compensates plaintiffs' counsel for their respective contributions in the prosecution of the Action." Ex. A at ¶ 16. Notwithstanding this grant of discretion, the M & A Defendants entered into the Fee Agreement with Lightman, Manochi & Christensen ("LMC Group"). The Fee Agreement provided that the "LMC Group shall receive a fee in the MDL 1712 class actions which is the greater of $2.2 million or 22.5% of the gross fee left *after all other attorneys in the case have been paid other than the LMC Group and the Affiliated Counsel Group*." Compl. Ex. B at ¶ 2(a) (emphasis added).

The Fee Agreement is attached as Exhibit B to the Complaint, and Plaintiffs do not dispute that the Fee Agreement is a binding. Apparently unsatisfied with the terms they agreed to accept on October 27, 2009, Plaintiffs now seek to evade the terms of the very contract they accuse Defendants of breaching. The Court should reject Plaintiffs' frivolous attempt to obtain funds to which they are not entitled because the unambiguous agreement sets forth the amount owed and this was the amount paid.

Moreover, notably absent from the Complaint is a writing known to have been in Plaintiffs' possession that demonstrates that when fees were distributed to Plaintiffs, the M & A Defendants provided a full accounting showing that the formula established by the October 27, 2009 Fee Agreement had been followed. A copy of the email showing the accounting is attached as Exhibit 1 (filed under seal) to the Declaration of Jonathan Auerbach, Esquire. The Auerbach Declaration is attached hereto and incorporated herein

as Exhibit B.

## II.   THE COMPLAINT MUST BE DISMISSED BECAUSE IT FAILS TO ALLEGE SUFFICIENT FACTS TO STATE A CLAIM.

### A.   Standard Of Review

A court may properly dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) where the plaintiff's "plain statement" fails to show that the plaintiff is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). A claim is plausible on its face only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The court must "accept all factual allegations as true, construe the complaint in light most favorable to the plaintiff, and determine whether, under a reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 233. But a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Hunt v. United States Tobacco Co.*, 538 F.3d 217, 227 (3d Cir. 2008). The court generally may not consider "matters extraneous to the pleadings", but may consider documents that are "integral to or explicitly relied upon on the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

B.    **Counts I and III Must Be Dismissed Against all Defendants Because They Fail to Plead the Amount Due Under the Contract, Fail to State a Plausible Claim that Plaintiffs are Entitled to an Additional Accounting, and Fail to Allege Defendants Breached the Court's Final Order in MDL 1712.**

Count I of the Complaint, which purports to sue for breach of contract, does not state a claim for relief because it does not plead the amount paid pursuant to the Fee Agreement or the amount due to Plaintiffs pursuant to the Fee Agreement.[2]  Count III of the Agreement, which purports to sue for an accounting, fails to plausibly allege that Plaintiffs are entitled to an accounting because it ignores a document indisputably demonstrating that Plaintiffs were previously provided with an accounting.

Under Pennsylvania law, Plaintiffs have the burden of pleading and proving damages resulting from the alleged breach of contract in Count I.  *Fishkin v. Susquehanna Partners, G.P.*, No. 03-3766, 2007 WL 560703, at *2 (E.D. Pa. Feb. 12, 2007) (McLaughlin, J.) (citing *Spang & Co. v. U.S. Steel Corp.*, 545 A.2d 861, 866 (Pa. 1988).  Here, Plaintiffs have not met their burden because they have not and cannot demonstrate that they were not paid in accordance with the parties written Fee Agreement.

The Fee Agreement is a fully integrated contract that supersedes the June 7, 2004 Fee Agreement (attached to Plaintiffs' Complaint as Exhibit A) because the Fee Agreement specifically states: "All prior agreements among them and any other party relating to the conduct of litigation or the allocation of fees are superseded."  Compl. Exhibit B at ¶ 1; *see also KDH Elec. Sys., Inc. v. Curtis Technology*, ___F. Supp. 2d___,

---

[2] The Fee Agreement is incorporated into the pleading because Plaintiffs attached it as Exhibit B to their Complaint and allege that it is "a true and correct copy" of the Amendment to the original fee agreement.  Compl. ¶ 23; *see also* Federal Rule of Civil Procedure 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes").

2011 WL 5428644, at *9-10 (E.D. Pa. Nov. 4, 2011) (McLaughlin, J.) (concluding similar language constituted an integration clause).

The Fee Agreement provides that Plaintiffs "shall receive a fee in the MDL 1712 class actions which is the greater of $2.2 million or 22.5% of the gross fee left *after all other attorneys in the case have been paid other than the LMC Group and the Affiliated Counsel Group*." Compl. Exhibit B at ¶ 2(a) (emphasis added).  The Fee Agreement thus unambiguously provided that fees would first be paid to all plaintiffs' counsel other than the signatories to the Fee Agreement (*i.e.* Plaintiffs and Jerome Marcus, Jonathan Auerbach, and the Affiliated Counsel Group).  After these deductions, Plaintiffs were entitled to receive 22.5% of everything that remained or $2.2 million dollars, whichever was greater. *See id.*

This Court's Final Order in MDL 1712, incorporated by reference in Plaintiffs' Complaint at ¶ 31, governs allocation of fees in MDL 1712 and awarded a total fee amount of $17,699,840.50.  Exhibit A at ¶16.  Instead of asserting the total amount Plaintiffs claim they are due and the amount they have already been paid from fees awarded in MDL 1712 and pursuant to the Fee Agreement, Plaintiffs merely (and repeatedly) assert that Defendants "short[ed] and faile[ed] to pay plaintiffs the sum of $926,000.00." *See, e.g.*, Compl. ¶¶ 1, 33-36, 43-44, 45-48.

As is evident from the Complaint, Plaintiffs were paid *something*, and in alleging that they were "*short[ed]* $926,000", *see e.g.* Compl. ¶ 33 (emphasis added), they clearly rely on some other unreferenced document reflecting that payment.  Similarly, in alleging that they repeatedly requested "defendants to provide and full and complete accounting of the disbursements" but that "defendants … have failed and refused to provide such

accounting", *see* Compl. ¶ 56, Plaintiffs ignore a document in their possession demonstrating that an accounting was provided.

Plaintiffs were paid the entire amount due pursuant to the Fee Agreement, and provided an accounting via email on March 19, 2010.  Auerbach Declaration Exhbit B at ¶¶ 2-4, 6.  A true and correct copy of that email (filed under seal) is attached to the Auerbach Declaration as Exhibit 1.  *Id.*  This Court's Final Order in MDL 1712 awarded fees of $17,699,840.50.  Exhibit A at ¶ 16.  Deductions for the payments to the law firms other than those named in the agreement totaled $4,450,000.00, leaving $13,249,840.00.  Auerbach Declaration Exhibit B at ¶ 3 and Exhibit 1.  The greater of $2.2 million or 22.5% of this sum is 22.5% ($ 2,981,214.00).  Thus the Fee Agreement mandated payment to Plaintiffs of $2,981,214.00 plus $15,373.79 in reimbursed costs.  Defendants also included payment to Plaintiffs of an additional $29,677, representing 22.5% of the interest ($131,897) accrued prior to distribution of fees awarded.  *See id.* at ¶ 6 and Exhibit 1.

Defendants paid Plaintiffs exactly this amount on or about March 24, 2010, having previously provided to Mr. Lightman the accounting set forth in the March 19, 2010 email.  *See* Auerbach Declaration, Exhibit B, at ¶ 4 and Ex 1.  The Court may properly consider the email because the email is integral to Plaintiffs' claims that they were "short[ed]" fees owed pursuant to the Fee Agreement and that they never received an accounting.  *See In re ATI Tech. Inc. Sec. Litig.*, 216 F. Supp. 2d 418, 430 (E.D. Pa. 2002) (Dalzell, J.) ("[A] court may consider an indisputably authentic document integral to or explicitly relied on in the complaint without converting the motion to dismiss into one for summary judgment.").  If a court were not permitted to consider such documents,

"a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Id.* (citing *Pension Benefit Guaranty Corp.*, 998 F.2d 1192, 1196 (3d Cir. 1993). And in fact, that is likely the very reason Plaintiffs failed to include the email as an attachment to their Complaint. But "[p]laintiff[s] cannot prevent a court from looking at the texts of the documents on which [their] claim is based by failing to attach or explicitly cite them." *Burlington Coat Factory*, 114 F.3d at 1426

Plaintiffs have thus received exactly what they agreed to accept and the accounting to which they are entitled. In addition, Plaintiffs accepted the money paid to them pursuant to this calculation, and at the time manifested no claim that the amount was incorrect. *See* Auerbach Declaration Exhibit B at ¶ 5.

Plaintiffs' demand for additional payments also fails as a matter of law because the Complaint nowhere alleges that the M&A Defendants improperly exercised the discretion granted to them by the Final Order in MDL 1712. The Order authorized Defendants Marcus and Auerbach, and their co-lead counsel John Hargrove, to "allocate [such fees] among plaintiffs' counsel in a fashion which, in the opinion and sole discretion of Co-Lead Counsel, fairly compensates plaintiffs' counsel for their respective contributions in the prosecution of the Action." Exhibit A at ¶16. That Order controls and defines the parties' obligations to one another. Plaintiffs do not allege that Defendants did not pay Plaintiffs in accordance with this Court's Order, or that Defendants disobeyed the Court's Order in any respect.

C.   **The Court Should Dismiss Count I's Demand for Punitive Damages Because Punitive Damages Are Not Available in Breach of Contract Claims.**

Plaintiffs' demand for punitive damages in Count I fails as a matter of law because punitive damages are not available in a claim for breach of contract. *Murray v. Commercial Union Ins. Co.,* 782 F.2d 432, 436 (3d Cir. 1986) ("'The law in Pennsylvania has always been that punitive damages cannot be recovered for breach of contract'") (quoting *Smith v. Harleysville Insurance Co.,* 275 Pa. Super. 276, 418 A.2d 705, 706 (1980)).

D.   **Count II Must be Dismissed Because Equitable Claims are Barred When Parties are Bound by a Writing.**

Count II, for unjust enrichment and quantum meruit similarly fail because there can be no such equitable claim where a writing binds the parties. "Under Pennsylvania law, 'the quasi-contractual doctrine of unjust enrichment is inapplicable when the relationship between the parties is founded on a written agreement or express contract." *KDH Elec. Sys., Inc.,* ___ F. Supp. 2d___, 2011 WL 5428644 at *14 (quoting *Hershey Foods Corp. v. Ralph Chapek, Inc.,* 828 F.2d 989, 999 (3d Cir. 1987)). The parties do not dispute that a binding writing exists here. *See* Complaint ¶23. Count II must be dismissed.

E.   **The Complaint Fails to State a Claim Against Berger & Montague Because it is not a Signatory to the Fee Agreement and Because it Fails to Allege Sufficient Facts to State any Claim.**

Counts I and III of the Complaint must also be dismissed against Berger & Montague because it is not a signatory to the Fee Agreement.[3] "Under Pennsylvania law,

---

[3]   The M&A Defendants include this argument in the interests of judicial economy and finality. It is clear that to the extent there is any possible liability against the Berger firm (which the M&A Defendants dispute for the reasons set forth herein) the Berger firm

a defendant who is neither a party nor signatory to a contract cannot be held liable for breach of the contract." *KDH Elec. Sys., Inc.*, ___F. Supp. 2d___, 2011 WL 5428644, at *6 (citing *Electron Energy Corp. v. Short*, 597 A.2d 175, 177 (Pa. Super. Ct. 1991), *aff'd* 618 A.2d 395 (Pa. 1993)).  Plaintiffs allege that Exhibit B to Plaintiffs' Complaint is "a true and correct copy" of the Amendment to the Fee Agreement.  Compl. ¶ 23.  The only signatories to Exhibit B are Plaintiffs and Jerome Marcus and Jonathan Auerbach.  *See* Exhibit B to Plaintiffs' Complaint.  Count I must therefore be dismissed as to Berger & Montague because it is not a party to the Fee Agreement, and accordingly, there is no valid contract claim against Berger & Montague.

Moreover, even under the liberal pleading standards of Federal Rule of Civil Procedure 8(a), the Complaint fails to state a plausible claim for relief against Berger & Montague because it makes only general allegations against the firm.  The only allegation that directly mentions Berger & Montague alleges Berger & Montague "reneged on their promise to include plaintiffs as co-lead counsel."  Compl. ¶ 21.  Without offering any further grounds for potential liability, or identifying any item or amount of damage said to flow from this alleged breach, Plaintiffs allege that Berger & Montague is liable for breach of contract (Count I ¶ 48), and for an accounting (Count III ¶ 60).  This general allegation fails to state a claim against Berger & Montague because it does "not contain sufficient factual matter for the Court to draw the reasonable inference that [Berger and Montague] is liable for any of the misconduct alleged."  *See KDH Elec. Sys., Inc.*, ___F. Supp. 2d___, 2011 WL 5428644, at *5 (citing *Twombly*, 550 U.S. at 556).

---

would be entitled to cross-claim as against M&A since the firm received no portion of the fees and any potential liability could only have be derivative to that of the M&A defendants.

Similarly, Count II fails because Plaintiffs simply demand judgment against Berger & Montague, but fail to allege any facts to support a reasonable inference that Berger & Montague was unjustly enriched. Indeed, Plaintiffs were repeatedly advised prior to the filing of this suit the Berger & Montague received no portion of the legal fees at issue, yet have improperly persisted in naming the firm as a defendant. [4]

III.   **ALTERNATIVELY, DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE THE TERMS OF THE FEE AGREEMENT ARE UNDISPUTED, AND THERE CAN BE NO REASONABLE DISPUTE THAT PLAINTIFFS WERE PAID IN ACCORDANCE WITH THOSE TERMS.**

   A.   **Standard of Review**

Defendants alternatively move for summary judgment as to Plaintiffs' Complaint.

Rule 12(d) provides as follows:

> If, on a motion under Rule 12(b)(6) ..., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed.R.Civ.P. 12(d). A court may convert a motion to dismiss to one for summary judgment: "(1) the materials submitted require conversion, and (2) the parties are given adequate notice of the court's intention to convert the motion." *Godshall v.*

---

[4] While the M&A Defendants are loathe to speculate as to why Plaintiff named the Berger firm, an email sent by Mr. Lightman to defendants before suit was filed provides some insight. There, Mr. Lightman stated: "We are sure that Berger and Montague will be very interested in the facts set forth in our draft." He continued that unless the M&A Defendants agreed to his demand for more money, "we will proceed to retain counsel, and finalize and file this Complaint, and serve it upon the Berger law firm." This improper behavior is unfortunately consistent with Mr. Lightman's similar threat, made in the Court's presence a few weeks before the deadline for submission of objections in MDL 1712, that unless he was paid a satisfactory amount in attorney's fees, he would telephone one or more of the named plaintiffs and urge them to object to the settlement. That threat was made *before* the October 27, 2009 agreement was signed.

*Independence Comm., Inc.*, No. 11–3000, 2011 WL 5980922 at *1 (E.D. Pa. Nov. 30, 2011) (Sanchez, J.) (citing *Rose v. Bartle*, 871 F.2d 331, 340 (3d Cir. 1989). Where a motion is captioned "as 'Motion to Dismiss the Complaint or, in the Alternative, for Summary Judgment'", a plaintiff has notice that the "Court might entertain a motion for summary judgment." *Id.* (citing *Hilfirty v. Shipman*, 91 F.3d 573, 578–79 (3d Cir. 1996).

A Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A material fact is one that might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is only genuine "if there is sufficient evidence to allow a reasonable fact-finder to return a verdict for the non-moving party." *Godshall*, 2011 WL at * (citing *Anderson*, 477 U.S. 248). The opposing party must "go beyond the pleadings ... and admissions on file, [and] designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Summary judgment is proper when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

B.   **Plaintiffs Failed to Show They are Entitled to Additional Payment Because the Undisputed Facts Establish that Plaintiffs Were Paid in Accordance With the Fee Agreement.**

As demonstrated above in II(B), Defendants paid Plaintiffs the entire amount due pursuant to the Fee Agreement and provided an accounting via email on March 19, 2010. *See* Auerbach Declaration, Exhibit B at ¶¶ 2, 4 and Exhibit 1 thereto. This Court's Final Order in MDL 1712 Final Order awarded fees of $17,699,840.50. Exhibit A at ¶ 16.

Defendants deducted from that sum payments to the law firms other than those named in the agreement, totaling $4,450,000.00, leaving $ 13,249,840.00.  Auerbach Declaration Exhibit B at ¶ 3 and Exhibit 1.  The greater of $2.2 million or 22.5% of this sum is 22.5% ($ 2,981,214.00).  Thus the Fee Agreement mandated payment to Plaintiffs of 2,981,214 plus $15,373.79 in reimbursed costs.  Defendants also paid an additional $29,677, representing 22.5% of the interest ($131,897) accrued prior to distribution of fees awarded.  *Id.* at ¶ 6 and Exhibit 1.  Defendants paid Plaintiffs $3,026,265 by check dated March 24, 2010, and provided Mr. Lightman an accounting five days prior that showed each item included in the calculation.  *Id.* at ¶¶ 2-4 Plaintiffs have thus received exactly what they agreed to accept and the accounting to which they are entitled.  In addition, Plaintiffs accepted the money paid to them pursuant to this calculation, and at the time manifested no claim that the amount was incorrect.  *Id.* at ¶ 5.

There is no genuine issue of material fact as to the terms of the Fee Agreement, nor is there any genuine issue of material fact that the Defendants paid Plaintiffs all amounts due pursuant to the Fee Agreement and provided Mr. Lightman an accounting thereof.

IV.    **CONCLUSION**

Given the clarity of the October 27, 2009 Fee Agreement, the simplicity of the calculations reflecting that Plaintiffs were paid in full pursuant to the Fee Agreement, the Complaint in this case is obviously baseless and must be dismissed.  Mr. Lightman was so advised by letter defendants and again by their counsel dated counsel for the M & A Defendants Auerbach on September 8, 2011.  Instead, he ignored these warnings and

filed the Complaint.  Should he now fail to immediately withdraw the Complaint with

prejudice, defendants will have no choice but to seek appropriate sanctions.


Respectfully submitted,


Dated: January 9, 2012                    /s/  Mark B. Sheppard
                                          Mark B. Sheppard, Esq.
                                          Pa. Atty. I.D. No. 50480
                                          MONTGOMERY, MCCRACKEN,
                                              WALKER & RHOADS, LLP
                                          123 South Broad Street
                                          Philadelphia, PA 19109-1099
                                          Tel: 215-772-1500
                                          msheppard@mmwr.com

                                          *Attorney for Defendants*
                                          JEROME M. MARCUS, ESQUIRE,
                                          JONATHAN AUERBACH, ESQUIRE,
                                          and MARCUS & AUERBACH LLC

## CERTIFICATE OF SERVICE

I, Mark B. Sheppard, hereby certify that I caused a true and correct copy of the

foregoing Memorandum in Support of Motion to Dismiss or in the Alternative, Motion

for Summary Judgment, with attached exhibits, to be served this date via E-mail upon the

following:

GARY P. LIGHTMAN, ESQUIRE
LIGHTMAN & MANOCHI
1520 Locust Street, 12th Floor
Philadelphia, PA  19102-4401
(215) 545-3000
garyplightman@lightmanlaw.com


H. LADDIE MONTAGUE, JR., ESQUIRE
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103-6365
(215) 875-3010
hlmontague@bm.net


/s/ Mark B. Sheppard
Mark B. Sheppard

Dated:  1-9-12

- 15 -

# EXHIBIT  A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: AMERICAN INVESTORS      :
LIFE INSURANCE CO. ANNUITY     :     MDL DOCKET NO. 1712
MARKETING AND SALES PRACTICES  :
LITIGATION                     :

ORDER

AND NOW, this 18th day of December, 2009, based on the
submissions of the parties, including their oral presentations at
the Fairness Hearing, and for the reasons stated in a memorandum
of law bearing today's date, IT IS HEREBY ORDERED, as follows:

1.   Incorporation of Documents: This Order
incorporates and makes a part hereof:

a.   The Parties' Stipulation of Settlement, filed
July 16, 2009, including Exhibits A through J thereto
(collectively, the "Settlement Stipulation"), which sets forth
the terms and conditions of the proposed settlement (the
"Settlement"); and

b.   The Court's findings and conclusions
contained in its Findings and Order Preliminarily Approving
Settlement and Directing Issuance of Notice to the Class, dated
July 28, 2009 ("Preliminary Approval Order").

All defined terms in this Final Order and Judgment
shall have the same meanings as in the Settlement Stipulation.

2.   Jurisdiction: The Court has personal jurisdiction
over the Parties and the Class Members (as defined below at

paragraph 3) and has subject matter jurisdiction over this action, including, without limitation, jurisdiction to approve the Settlement, to settle and release all claims arising out of the transactions alleged in the Third Amended Complaint (the "Complaint") and set forth in the Released Transactions (as defined in the Settlement Stipulation), and to dismiss this action on the merits and with prejudice.  All Class Members who have not excluded themselves from the Class have consented to the jurisdiction of this Court for purposes of this action and the settlement of this action.[1]

      3.   The Class: Persons and Entities Excluded: The Class as defined in the Court's Preliminary Approval Order is hereby finally certified for settlement purposes.  A list of those persons and entities who have requested exclusion from the Class in accordance with the terms of the Settlement Stipulation and the Preliminary Approval Order is on file with the Court as Exhibit F to the Lake Declaration and is incorporated herein and made a part hereof.  These persons and entities are hereby

---

[1] The Exhibits to the Stipulation of Settlement are as follows: Exhibit A (List of plan codes and/or product names for Company Annuities included in Settlement); Exhibit B (Class Notice Package Cover Letter); Exhibit C (Form of Class Notice); Exhibit D (Election Form); Exhibit E (Post-Settlement Mailing Cover Letter); Exhibit F (Claim Form); Exhibit G (Proposed Findings and Order Preliminarily Approving Settlement and Directing Issuance of Notice to the Class); Exhibit H (Proposed Final Order and Judgment); and Exhibit J (Form of Escrow Agreement).

excluded from the Class.  Also excluded is Sarah C. Caudill by
Court Order.

       4.   <u>Adequacy of Representation</u>: Jerome M. Marcus,
Esq., Jonathan Auerbach, Esq., and John Hargrove, Esq. (Co-Lead
or Class Counsel) and other counsel of record herein for the
Named Plaintiffs have fully and adequately represented the Class
for purposes of entering into and implementing the Settlement and
have satisfied the requirements of Fed. R. Civ. P. 23 and
applicable law.  Jerome M. Marcus, Esq., Jonathan Auerbach, Esq.,
and John Hargrove, Esq. shall continue as Co-Lead Counsel.

       5.   <u>Settlement Administrator</u>: The selection and
retention of Rust Consulting, Inc. as Settlement Administrator
was reasonable and appropriate.

       6.   <u>Class Notice</u>: Individual notice (the Class Notice
Package) was sent to each reasonably identifiable Class Member
via first-class mail to their last known address, and notice and
other materials were made available on a publicly available
Internet site, in accordance with the Preliminary Approval Order.
The Court finds that this Notice:

       a.   Constituted the best practicable notice to
Class Members under the circumstances of this action;

       b.   Was reasonably calculated, under the
circumstances, to apprise Class Members of: (i) the pendency of
this class action lawsuit; (ii) their right to exclude themselves

3

from the Class; (iii) their right to object to any aspect of the proposed Settlement, the fairness, reasonableness or adequacy of the proposed Settlement, the adequacy of the Class' representation by Plaintiffs or Plaintiffs' Counsel, and/or the award of attorneys' fees and expenses; (iv) their right to request to appear at the Fairness Hearing, personally or through counsel, if they did not exclude themselves from the Class; and (v) the binding effect of the orders and judgment in this action, whether favorable or unfavorable, on all persons who do not request exclusion from the Class;

   c. Was reasonable and constituted due, adequate and sufficient notice to all persons entitled to be provided with notice;

   d. Complied with Fed. R. Civ. P. 23; and

   e. Fully satisfied the requirements of the United States Constitution (including the Due Process Clause) and all other applicable law and procedural rules.

   7. <u>Final Settlement Approval and Binding Effect</u>: The terms and provisions of the Settlement have been entered into in good faith, and are fair, reasonable and adequate as to, and in the best interests of, the parties and the Class Members, and in full compliance with all applicable requirements of the United States Constitution (including the Due Process Clause) and all other applicable law and procedural rules. Therefore, the

4

Settlement is approved and the objections to the Settlement are expressly overruled. The Settlement, and this Final Order and Judgment, shall be forever binding on the Plaintiffs and all other Class Members, as well as their heirs, executors and administrators, successors and assigns, and shall have <u>res judicata</u> and other preclusive effect in all pending and future claims, lawsuits, arbitrations or other proceedings maintained by or on behalf of any such persons, to the fullest extent allowed by law.

       8.   <u>Implementation of Settlement</u>: The Parties are directed to implement the Settlement according to its terms and conditions. Defendants will provide General Policy Relief and Claim Process Relief in accordance with the terms and conditions of the Settlement.

       9.   <u>Communications With Class Members</u>: The Parties and Parties' Counsel are hereby authorized to communicate with Class Members and Owners, as contemplated by and in accordance with the terms of the Settlement Stipulation and the Preliminary Approval Order, without requiring further approval of the Court.

       10.  <u>Appeal</u>: Any appeal from this Final Order and Judgment must be preceded by (i) a timely objection to the Settlement filed in accordance with the requirements of the Settlement Stipulation and Preliminary Approval Order or a request to intervene upon a representation of inadequacy of

counsel, (ii) a request for a stay of implementation of the
Settlement, and (iii) posting of an appropriate bond.  Absent
satisfaction of all three of these requirements, Defendants are
authorized, at their sole option and in their sole discretion, to
proceed with implementation of the Settlement, even if such
implementation would moot any appeal.

11.  Post-Settlement Mailing: Pursuant to the
Settlement Stipulation, the parties are directed to mail the
Post-Settlement Mailing, including the Claim Form, substantially
in the form attached as Exhibits E and F to the Settlement
Stipulation, as provided for in the Settlement Stipulation.

12.  Release: The following Release, which is
transcribed from Section X of the Settlement Stipulation and
amended by the Court with the parties' consent, is expressly
incorporated herein in all respects, is effective as of the date
of this Final Order and Judgment, and forever discharges the
Releasees from any and all claims and liabilities within the
scope of the Release:

RELEASE AND WAIVER

Plaintiffs agree to a full and complete general release
and waiver as follows:

I.   Release And Waiver - Definitions

For purposes of this release and waiver (the
"Release"):

6

A.   The term "Releasees" means, individually and collectively, the Defendants and Other Defendants and the Defendants' and Other Defendants' respective past, present, and future parent companies, subsidiaries, affiliates, predecessors, successors and assigns, together with each of the Defendants' and Other Defendants' respective past, present, and future officers, directors, employees, representatives, attorneys, and agents (including, without limitation, those acting on behalf of Defendants and within the scope of their agency), all Agents, including, without limitation, IMOs and other marketing organizations involved in any way, directly or indirectly, in the marketing, sale, and servicing of Company Annuities, and all of such Releasee's heirs, administrators, executors, insurers, predecessors, successors and assigns, or any of them, and including any person or entity acting on behalf or at the direction of any of them.

B.   The term "Released Transactions" means (a) the design, development, marketing, offer, solicitation, application, underwriting, acceptance, issuance, sale (including, without limitation, in connection with the issuance of a Company Annuity as a replacement for a non-Company annuity or another Company Annuity), presentation, illustration, projection, purchase, operation, performance, interest crediting, charges, administration, servicing, retention, and/or replacement (by

7

means of surrender, partial surrender, loans respecting, withdrawal and/or termination of any annuity) of or in connection with (1) the Contracts or (2) any annuity sold or to be sold or offered in connection with, or relating in any way directly or indirectly to the sale or solicitation of, the Contracts, or external or internal replacements of annuities issued by the Companies, (b) the marketing, sale, delivery, and/or performance of any products, plans, or services in connection with, or relating to or allegedly relating to, the marketing, purchase, or sale of a Contract, and (c) any and all matters concerning or relating to this Settlement (including, without limitation, the award, election, and/or implementation of any Settlement Relief with respect to a Contract).

C.   The term "Other Defendants" means the following persons and entities that are named as defendants in the complaints filed in the putative class actions described in Section I.A.2 but are not named as defendants in the Complaint: Brian J. Newmark, Estate Planning Advisors Corp., BEN Consulting Corp., Funding & Financial Services Corp., Victoria Larson, Kenneth Krygowski, National Western Life Insurance Company, American Equity Investment Life Insurance Company, The Patriot Group, Addison Group, Stephen Strope, American Investors Sales Group, Inc., Senior Benefit Services of Kansas, Inc.; provided, however, that the Release provided for herein shall not be construed to apply

to claims that do not relate in any way to a Company Annuity or a
Released Transaction made by any Plaintiffs against such Other
Defendants in any lawsuit that was filed directly by Plaintiffs
against, and served on, such Other Defendants prior to the
Execution Date.

    D.    All other capitalized terms used in this Section X
shall have the meanings ascribed to them in Section II or
elsewhere in this Agreement.

II.  <u>Release And Waiver</u>

    A.    In consideration of the promises and covenants of
settlement between and among the Parties and as further contained
in this Settlement Agreement (including, without limitation, the
consideration to the Named Plaintiffs and Class Members, the
fairness and adequacy of which is hereby acknowledged), the Named
Plaintiffs and all Class Members, on behalf of themselves, their
heirs, assigns, executors, administrators, predecessors, and
successors, and any other person or entity purporting to claim on
their behalf, hereby expressly and generally release and
discharge the Releasees from any and all causes of action,
claims, allegations of liability, damages, restitution,
equitable, legal and administrative relief, interest, demands or
rights whatsoever, including, without limitation, for all claims
of actual monetary damages, for claims of injunctive or equitable
type of relief, and for claims of mental anguish and/or punitive

or exemplary damages, whether such claims are based on federal, state, or local law, statute, ordinance, or regulation (including, without limitation, federal or state insurance laws or regulations, RICO type laws, and securities laws or regulations), contract, common law, or any other source, relating to any Company Annuities and that were or could have been asserted against Defendants in the Complaint or any other complaint encompassed in the Action, or that could have been asserted against Defendants before any court, arbitration panel, or regulatory or administrative agency based on or related to the facts alleged in the Complaint or any other complaint encompassed in the Action, or relating in any way to the Released Transactions, and whether or not brought directly, indirectly, on a representative basis, or otherwise, including, but not limited to, actions brought on behalf of the Named Plaintiffs and/or Class Members by any state or federal government officials or agencies.

B.    Plaintiffs hereby expressly further agree that they shall not now or hereafter institute, maintain, assert, join, or participate in, either directly or indirectly, on their own behalf, on behalf of a class, or on behalf of any other person or entity, any action or proceeding of any kind against the Releasees asserting causes of action, claims, allegations of liability, damages, restitution, injunctive, equitable, legal or

administrative relief, interest, demands or rights, including, without limitation, claims for actual monetary damages, claims of injunctive or other equitable type of relief, and claims for mental anguish and/or punitive or exemplary damages, whether based on federal, state or local law, statute, ordinance, or regulation (including, without limitation, federal or state insurance laws or regulations, RICO type laws, and securities laws or regulations), contract, common law, or any other source, that are based on or related to the facts alleged in the Complaint or any other complaint filed in the Action, or that relate in any way to the Released Transactions, and that were or could have been asserted against Defendants in the Complaint or any other complaint encompassed in the Action, or that could have been asserted against Defendants in an amended complaint in the Action or before any court, arbitration panel, or regulatory or administrative agency, or in any other complaint or claim. Nothing in this Order shall be construed to impede, impinge, impair or prevent in any fashion any Named Plaintiff and/or Class Member from responding to, cooperating in or communicating with any state, federal or local government body or official or any attorney representing a private party, including, without limitation, appearance as a witness for testimony or the production of information.

C.   Nothing in this Release shall be deemed to alter the

11

contractual rights and benefits of a Named Plaintiff or any other

a Class Member for the express written benefits that are due or

will become due in the future pursuant to the express written

terms of a Contract, except to the extent that such rights are

altered or affected by the award, election, and/or implementation

of Settlement Relief under this Agreement.

D.    In connection with this Release, Plaintiffs acknowledge

that they are aware that they may hereafter discover claims or

damage presently unknown or unsuspected, or facts in addition to

or different from those which they now know or believe to be

true, with respect to the Released Transactions or claims

released herein, or with respect to their Contracts.

Nevertheless, Plaintiffs understand and agree that this Release

is, and is intended to be, a broad, general release of the

Releasees, and Plaintiffs agree that this Release fully, finally,

and forever shall settle and release all claims and causes of

action whatsoever, and all claims relating thereto, and which now

exist, hereafter may exist, or might have existed (whether or not

previously or currently asserted in any action or proceeding)

that are within the scope of Section X.B.1 and/or 2.

E.    Plaintiffs expressly understand that Section 1542 of

the Civil Code of the State of California provides: "a general

release does not extend to claims which the creditor does not

know or suspect to exist in his favor at the time of executing

12

the release, which if known by him must have materially
affected his settlement with the debtor." To the extent that
California or other similar federal or state law may apply
(because of or notwithstanding the parties' choice of law in this
agreement), Plaintiffs hereby agree that the provisions of
Section 1542 and all similar federal or state laws, rights,
rules, or legal principles, to the extent they are found to be
applicable herein, are hereby knowingly and voluntarily waived
and relinquished by Plaintiffs, and Plaintiffs hereby agree that
this is an essential term of the release.

F.    Nothing in this Release shall preclude any action to
enforce the terms of this Agreement.

G.    Plaintiffs hereby agree and acknowledge that the
provisions of this Release together constitute an essential term
of the Agreement.

H.    Plaintiffs expressly agree that this Release shall be,
and may be raised as, a complete defense to and will preclude any
action or proceeding encompassed by the release of Releasees
herein.

I.    It is the intention of the Named Plaintiffs, on behalf
of themselves and the Class Members, in executing this Release to
fully, finally, and forever settle and release all matters and
all claims released under this Section X.

J.    Plaintiffs reserve the right to bring and pursue claims

13

that persons or entities other than the Releasees are solely
liable for damages, losses, costs, or expenses allegedly
sustained by Plaintiffs.  It is the intention of the Parties,
however, that if any such other person or entity is found to be a
joint tortfeasor with any Releasees, such other person or entity
shall not be obligated or required to pay more than the
proportionate share of the adjudicated liability found against
such person or entity, and that the Releasees be relieved from
liability for contribution and/or indemnity to any such person or
entity.  Therefore, as further consideration for the
Settlement Relief to be provided by Defendants pursuant to this
Agreement, it is hereby agreed that in the event it is determined
that any such other person or entity and any Releasees are joint
tortfeasors with respect to any damages, losses, costs, or
expenses so claimed by any Plaintiffs: (a) Plaintiffs shall
reduce their total claims against said other joint tortfeasors by
the full extent of the proportionate share of liability of the
Releasees as adjudicated under a final, non-appealable verdict or
judgment of a court of competent jurisdiction, and (b) any
recovery awarded or verdict and/or judgment entered against said
other joint tortfeasors shall be reduced by the full extent of
the proportionate share of the Releasees' liability to the extent
adjudicated as aforesaid.  It is further agreed as consideration
for the Settlement Relief to be provided by Defendants pursuant

14

to this Agreement that in any action in which any of the
Releasees may be made a defendant or third-party defendant
together with any other alleged tortfeasors, any verdict rendered
against the other alleged tortfeasors shall be reduced by the
proportionate share of the Releasees, and any judgment on said
verdict shall be in the amount of the verdict reduced by the
proportionate share of the Releasees, whether or not any of the
Releasees was in fact a joint tortfeasor.  The immediately
preceding sentence is intended to obviate the necessity and
expense of any of the Releasees having to appear on the record
and participate at its or their expense in an action merely for
the purpose of determining if in fact it was a tortfeasor so as
to entitle the other tortfeasors to a pro rata reduction of any
verdict.  To give full force and effect to the foregoing
provisions of this paragraph, Plaintiffs specifically agree to
seek to structure any recovery which may be awarded, or any
verdict and/or judgment which may be entered, in any matter to
ensure that the Releasees shall never be obligated to pay to any
Plaintiffs or to any other tortfeasors anything other than the
Settlement Relief afforded pursuant to this Agreement in
connection with any claim or liability within the scope of the
Release herein.

13.  Paragraph 12 of this Order covers, without
limitation, any and all claims for attorneys' fees and expenses,

15

costs or disbursements incurred by Class Counsel or other

plaintiffs' counsel representing Plaintiffs or Class Members in

this action, in connection with or related in any manner to this

action, the settlement of this action, the administration of such

settlement, and/or the Released Transactions, except to the

extent otherwise specified in this Order and/or the Settlement

Stipulation.

      14.   <u>Permanent Injunction</u>: Except to the extent a

Class Member has been excluded by this Order from the Class (or

is entitled to seek and/or receive relief pursuant to the

settlement agreement encompassed in the Consent Order for Final

Judgment, effective October 22, 2008, by and among the State of

Minnesota, by and through its Attorney General, Lori Swanson,

Aviva USA Corporation (f/k/a AmerUs Group Co.), American

Investors Life Insurance Company, Inc., and Aviva Life and

Annuity Company (f/k/a AmerUs Life Insurance Company)), all Class

Members are hereby permanently barred and enjoined from (1)

filing, commencing, prosecuting, maintaining, intervening in,

participating in as class members or otherwise, or receiving any

benefits from, any lawsuit (including putative class action

lawsuits), arbitration, administrative or regulatory proceeding

or order in any jurisdiction, based on or relating to the

Released Transactions or the claims or causes of action, or the

facts and circumstances relating thereto, alleged in the

Complaint or any other complaint encompassed in the Action; and (2) organizing any Class Members into a separate class for purposes of pursuing as a putative class action any lawsuit, arbitration, or other legal proceeding or action (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) based on or relating to the Released Transactions or the claims or causes of action, or the facts and circumstances relating thereto, alleged in the Complaint or any other complaint encompassed in the Action.  The Court finds that issuance of this permanent injunction is necessary and appropriate in aid of the Court's jurisdiction over the action and to protect and effectuate this Final Order and Judgment.  Nothing in this Order shall be construed to impede, impinge, impair or prevent in any fashion any Named Plaintiff and/or Class Member from responding to, cooperating in or communicating with any state, federal or local government body or official or any attorney representing a private party, including, without limitation, appearance as a witness for testimony or the production of information.

    15.  <u>Enforcement of Settlement</u>: Nothing in this Final Order and Judgment shall preclude any action to enforce the terms of the Settlement Stipulation; nor shall anything in this Final Order and Judgment preclude the Plaintiffs or other Class Members from participating in the Claim Review Process described in the

Settlement Stipulation, if they are entitled to do so under the terms of the Settlement Stipulation.

16. Attorneys' Fees and Expenses: Counsel for Plaintiffs and the Class of record herein are hereby awarded attorneys' fees in the amount of $17,699,840.50 and reimbursement of their disbursements and expenses in the amount of $550,159.50 to be paid by Defendants to Class Counsel. This amount, totaling $18,250,000, plus interest from date Escrow Account was funded, covers any and all claims for attorneys' fees and expenses incurred by any and all counsel for plaintiffs and the class in connection with the settlement of this action and the administration of such settlement. Such fees, expenses and any interest thereon are to be deposited by the Defendants into an account maintained by Co-Lead Counsel within five business days after entry of this Final Order and Judgment, in accordance with and subject to the terms and conditions set forth in Section XI of the Settlement Stipulation. The above amounts shall be paid to Co-Lead Counsel, pursuant to the terms of the Stipulation of Settlement. The award of attorneys' fees and expenses shall be allocated among plaintiffs' counsel in a fashion which, in the opinion and sole discretion of Co-Lead Counsel, fairly compensates plaintiffs' counsel for their respective contributions in the prosecution of the Action.

17. Other Payments: The Court awards additional

18

payments to the Named Plaintiffs in a total sum of $115,000. The specific awards to the individual Named Plaintiffs are as follows:

- Beryl Price: $10,500

- Charlotte Price: $10,500

- Estate of Joseph Healy: $10,500

- George Miller: $10,500

- Richard Stein: $10,500

- Dena Stein: $10,500

- Mary Lynch: $10,500

- Dorothy Eddy: $10,500

- Evelyn Edwards: $10,500

- Jean Ryles: $10,500

- Michael J. Quinn: $5,000

- Catherine M. Quinn: $5,000

To the extent that any Named Plaintiff is deceased, the parties shall cooperate to ensure that any sums awarded to that Named Plaintiff are distributed to his or her heirs.  All sums to be distributed to any Named Plaintiff or to his or her heirs shall be paid by the Defendants within five business days after the Final Settlement Date, subject to the terms and conditions set forth in Section XI of the Settlement Stipulation.

18.  Modification of Settlement Stipulation: The parties are hereby authorized, without needing further approval

19

from the Court, to agree to and adopt such amendments to, and
modifications and expansions of, the Settlement Stipulation as
are not materially inconsistent with this Order and do not
unreasonably limit the rights of the Class Members under the
Settlement Stipulation.

19.  Retention of Jurisdiction: The Court has
jurisdiction to enter this Final Order and Judgment.  Without in
any way affecting the finality of this Final Order and Judgment,
the Court expressly retains jurisdiction as to all matters
relating to the administration, consummation, enforcement and
interpretation of the Settlement Stipulation and of this Final
Order and Judgment, and for any other necessary purpose,
including, without limitation:

a.  Enforcing the terms and conditions of the
Settlement Stipulation and resolving any disputes, claims or
causes of action that, in whole or in part, are related to or
arise out of the Settlement Stipulation, this Final Order and
Judgment (including, without limitation, determining whether a
person or entity is or is not a Class Member, and enforcing the
Permanent Injunction that is a part of this Final Order and
Judgment) and determining whether claims or causes of action
allegedly related to this case are or are not barred by this
Final Order and Judgment;

b.  Entering such additional orders as may be

20

necessary or appropriate to protect or effectuate this Final

Order and Judgment, or to ensure the fair and orderly

administration of the Settlement; and

   c. Entering any other necessary or appropriate

orders to protect and effectuate the Court's retention of

continuing jurisdiction; provided however, nothing in this

paragraph is intended to restrict the ability of the parties to

exercise their rights under the Settlement Stipulation

that are not in conflict with this Final Order and Judgment.

  20. No Admissions: Neither this Final Order and

Judgment, nor the Settlement Stipulation, nor any other document

referred to herein or therein, nor any action taken to carry out

this Final Order and Judgment is, may be construed as, or may be

used as an admission or concession by or against Defendants of

the validity of any claim or any actual or potential fault,

wrongdoing or liability whatsoever. Entering into or carrying out

the Settlement Stipulation, and any negotiations or proceedings

relating to it, shall not in any event be construed as, or deemed

evidence of, an admission or concession as to Defendants' denials

or defenses, and shall not be offered or received in evidence in

any action or proceeding against any party hereto in any court,

administrative agency or other tribunal for any purpose

whatsoever, except as evidence of the Settlement or to enforce

the provisions of this Final Order and Judgment and the

Settlement Stipulation; <u>provided however</u>, this Final Order and Judgment and the Settlement Stipulation may be filed in any action against or by Defendants or Releasees (as defined in the Settlement Stipulation) to support a defense of *res judicata*, collateral estoppel, release, waiver, good-faith settlement, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue preclusion or similar defense or counterclaim to the extent allowed by law.

21. <u>Dismissal of Action</u>: All of the putative class actions encompassed in this proceeding (including the Complaint and the complaints listed in Section I.A.2 of the Settlement Stipulation), and all claims asserted therein or otherwise presented thereby, are hereby dismissed on the merits and with prejudice, without fees or costs to any party except as otherwise provided in the Settlement Stipulation or this Final Order and Judgment.

BY THE COURT:

<u>/s/ Mary A. McLaughlin</u>
MARY A. MCLAUGHLIN, J.

22

# EXHIBIT  B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GARY P. LIGHTMAN, ESQUIRE,  :
and                         :
LIGHTMAN & MANOCHI          :
1520 Locust Street, 12th Floor :
Philadelphia, PA  19102-4401 :
                            :
            Plaintiffs,     :
                            :
        v.                  :
                            :
JEROME M. MARCUS, ESQUIRE,  :      Civil Action No. _____
JONATHAN AUERBACH, ESQUIRE, :
and                         :
MARCUS & AUERBACH LLC       :
400 Greenwood Avenue, Suite 200 :
Wyncote, PA  19095          :
                            :
        and                 :
                            :
BERGER & MONTAGUE, P.C.     :
1622 Locust Street          :
Philadelphia, PA  19103-6365, :
                            :
            Defendants.     :
                            :

## DECLARATION OF JONATHAN AUERBACH, ESQUIRE

I, Jonathan Auerbach, declare as follows:

1.  Since September 1, 2006, I have been a partner in the law firm of Marcus & Auerbach LLC.

2.  On March 19, 2010, I sent to Gary P. Lightman, Esquire and his partner Glenn Manochi, Esquire the email attached hereto as Exhibit 1, which provided the figures we used to determine the amount due to Lightman & Manochi in MDL-1712.

3.  All of the amounts set forth in the email as payments made to other law firms were in fact made, in those amounts, at the direction of Co-Lead Counsel in MDL-1712.

4.  Pursuant to the calculations set forth in Exhibit 1 hereto, Co-Lead Counsel caused Lightman & Manochi to receive $3,026,265.00.  A check in that amount was issued to Lightman & Manochi on March 24, 2010.  Lightman & Manochi negotiated that check within 48 hours thereafter.

5.    At no time prior to Lightman & Manochi's acceptance and negotiation of that check, did Lightman or his firm dispute or question the amount calculated for payment to Lightman & Manochi as set forth in the March 19, 2010 email (Exhibit 1, hereto).

6.    As shown in Exhibit 1 hereto, the amount paid to Lightman & Manochi was the sum of three elements:

a.    22.5% of the fee awarded by the Court, net of fees paid to all lawyers other than those identified in the October 27, 2009 Agreement attached as Exhibit B to Plaintiffs' Complaint in this matter, as contemplated by the October 27, 2009 Agreement;

b.    Those reimbursable expenses incurred by plaintiffs in MDL 1712, also as contemplated by the October 27, 2009 Agreement;

c.    In addition, although not called for the October 27, 2009, Agreement, Lightman & Manochi were also paid 22.5% of the interest earned on the amount paid by defendants for fees and costs between the date that amount was paid by defendants and the date upon which funds were distributed by lead counsel.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Jonathan Auerbach


Executed on January 9, 2012.