IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GARY P. LIGHTMAN, ESQ.,          :      CIVIL ACTION
et al.                           :
                                 :
        v.                       :
                                 :
JEROME M. MARCUS, ESQ.,          :
et al.                           :      NO. 12-97

MEMORANDUM

McLaughlin, J.                                    April 17, 2012

        The plaintiffs filed this case in the Court of Common

Pleas of Philadelphia County on December 9, 2011, seeking

$926,000 and an accounting from Jerome Marcus, Jonathan Auerbach,

their firm, Marcus & Auerbach, and their former firm, Berger &

Montague, in connection with the allocation of attorney's fees in

Multidistrict Litigation No. 1712, In re American Investors Life

Insurance Company Annuities Litigation ("MDL").  The case was

removed to this Court on January 9, 2012, as related to the

Court's ongoing jurisdiction over the MDL and its Order approving

its settlement.  Berger and Montague were voluntarily dismissed

from this suit and the remaining defendants have moved to dismiss

(or in the alternative for summary judgment); the plaintiffs have

cross-moved under Rule 56(d) for a stay or denial of the

defendants' motion pending additional discovery.  The Court will

grant the defendants' motion and deny the plaintiffs' motion.

I.    Allegations of the Plaintiffs

        The plaintiffs contend that they are owed $926,000 in

connection with their referral of class action cases that
ultimately were incorporated into the MDL.  Pursuant to two
agreements between the plaintiffs and the defendants, the
plaintiffs claim that they are owed a $926,000[1] "referral fee" of
22.5% of the total attorneys fees paid to a group referred to in
the parties' agreements as the "Affiliated Counsel Group" (ACG)
connected with the MDL.  This figure was initially negotiated as
part of an agreement first executed by the parties in 2004,
Compl. Ex. A, and finalized in a later agreement in 2009, Compl.
Ex. B.

       The 2004 agreement defines the ACG as consisting of
"Jonathan Auerbach and Jerome Marcus of Berger & Montague, P.C.,
David Senoff of Billet & Connor, P.C., and Jacob A. Goldberg,
L.L.C."  Compl. Ex. A at 1.  That agreement later provides:

> Pursuant to this agreement the ACG retains
> the right to add members to the ACG, subject
> to consultation and approval by LMC
> [Lightman, Manochi & Christensen, the
> predecessor to the plaintiffs here],
> provided, however, that any such firm that we
> affiliate with will be bound by the terms of
> our affiliation agreement with you, and you
> will be paid from ACG's share of attorney's
> fees . . . .

Id. at 2 n.1.

       The 2009 agreement is between "Lightman + Manochi
(formerly Lightman, Manochi & Christensen) (the 'LMC Group') and

---

       [1] At other points in the Complaint, this amount is averred
to be $962,000.  See Compl. ¶¶ 43, 46, 47.

Jerome Marcus and Jonathan Auerbach, for themselves and for the 'Affiliated Counsel Group' (which Affiliated Counsel Group includes Berger & Montague, P.C., David Senoff, Billett & Connor, PC, and Jacob A. Goldberg, LLC) . . . ."  It states that "[a]ll prior agreements among [the parties] and any other party relating to the conduct of litigation or the allocation of fees are superceded."  The agreement contemplates the payment of 22.5% "of the gross fee left after all other attorneys in the case have been paid other than the LMC Group and the Affiliated Counsel Group."  Compl. Ex. B.  The plaintiffs acknowledge that at least the fee percentage to which they are entitled--which is addressed by both the 2004 and 2009 agreements--is governed by the 2009 agreement.  Tr. Hr'g 3/21/2012 at 20.

However, the plaintiffs also argue that the 2009 agreement "purposefully was silent" as to whether John Hargrove was part of the ACG, that he in fact was made part of the ACG by the defendants, and that they are therefore entitled to 22.5% of the fees paid to him in connection with the MDL settlement, or $926,000.  Id. at 21; Compl. ¶ 33.  They acknowledge that they have received 22.5% of all fees paid to counsel other than Mr. Hargrove.  Tr. Hr'g 21.  The plaintiffs also claim that they have not been provided with an accounting of the payments related to the disbursement of fees.  Id. ¶¶ 36, 44.

The complaint brings causes of action for Breach of

Contract (Count I), Unjust Enrichment/quantum meruit (Count II), and for an accounting (Count III) detailing the disbursement of attorneys fees from the MDL.

II.  Discussion

The defendants have moved to dismiss the plaintiffs' complaint, arguing that the plaintiffs have been paid in accordance with their contract that governs their fee allocation from the MDL, and that the accounting the plaintiffs seek has already been provided to them.  The Court will grant that motion. The 2009 agreement--and to the extent it still governs the relationship between the parties, the 2004 agreement--is clear on which persons and organizations comprise the Affiliated Counsel Group and the process by which the composition of that group may be modified.  John Hargrove is not a part of that group.  As a result, the breach of contract claim must fail.  Any claim for unjust enrichment fails because of the presence of a written agreement.  Finally, the plaintiffs have not alleged facts demonstrating their entitlement to an accounting but nevertheless have received one.

Because the complaint will be dismissed, the Court will deny the plaintiffs' cross-motion under Rule 56(d).


A.   Contract Claim

The defendants had initially maintained that the

-4-

"supercedes all prior agreements" clause in the 2009 agreement foreclosed any use of the 2004 agreement in interpreting the relationship between the parties.  However, at oral argument, counsel argued that the documents should be read in conjunction with one another.  Tr. Hr'g 24.

Whether the agreements are read in conjunction or not, the plaintiffs cannot state a claim in connection with the failure to pay them a portion of Mr. Hargrove's fees because under any reading of the two agreements, the plaintiffs are not entitled to that money.  The parties agree that the 2009 agreement grants the plaintiffs the right to 22.5% of attorneys fees awarded in the MDL after all attorneys other than the plaintiffs and the ACG are paid.  Both agreements describe the composition of the ACG, but the plaintiffs argue that the definition, at least in the 2009 agreement, is purposefully silent as to whether Hargrove is or is not a member, and request discovery to determine whether or not he is.

1.   <u>2009 Agreement</u>

Under any reasonable reading of the 2009 agreement, Hargrove is not a part of the ACG and therefore the plaintiffs are not entitled to 22.5% of his fees.  Either on its own or read together with the 2004 agreement, the 2009 agreement represents the complete agreement between the parties, and any other

-5-

understandings or negotiations as to Hargrove's ACG membership
may not be considered according to the parol evidence rule.  The
2009 agreement describes itself as an agreement between "Lightman
+ Manochi (formerly Lightman, Manochi & Christensen) (the 'LMC
Group') and Jerome Marcus and Jonathan Auerbach, for themselves
and for the 'Affiliated Counsel Group' (which Affiliated Counsel
Group includes Berger & Montague, P.C., David Senoff, Billett &
Connor, PC, and Jacob A. Goldberg, LLC) . . . ."  Compl. Ex. B.
It makes no reference to Hargrove or a process for adding him to
the ACG.  The plaintiffs argue that "includes" in the language
above should be read to mean "includes but is not limited to,"
and that Hargrove was in fact part of that group despite his name
not being listed among its members.  Tr. Hr'g 7-9.  If Hargrove
were a part of that group, or there were some alternative means
for later determining whether he was, the agreement "would
naturally and normally include" language to that effect,
particularly because it describes who the other members of the
group are.  <u>Mellon Bank v. First Union Real Estate Equity and
Mortg. Inv.</u>, 951 F.2d 1399, 1405 (3d Cir. 1991) (quoting <u>Gianni
v. R. Russel & Co.</u>, 126 A. 791 (Pa. 1924)).

     If the 2009 agreement intended the ACG to include, but
not be limited to, the members listed, it could easily have said
so.  The 2009 agreement does not so provide, and its language is
not ambiguous as the plaintiff contends.  Any contention that the

parties had orally "agreed to disagree," Tr. Hr'g 7, on the ACG's composition is foreclosed because the meaning of the agreement as written is clear and the parol evidence rule bars review of any subsidiary understandings between the parties.  Because the parties' agreement is integrated, the Court is prohibited from looking beyond its terms to find evidence supporting the plaintiff's argument that Hargrove was a part of the ACG.

       2.   <u>2009 and 2004 Agreements Read Together</u>

Even read in conjunction with the 2004 agreement, the 2009 agreement cannot give rise to a finding that the ACG included Hargrove.  The plaintiffs contend that the language in the 2009 agreement regarding superseding of prior agreements only applies to the allocation of fees and conduct of litigation, and that parts of the 2004 agreement relating to the composition of the ACG are therefore still enforceable.  The 2004 agreement describes the ACG nearly identically,[2] and creates a process by which members may be added to the ACG, namely, "subject to consultation and approval by" the plaintiffs.

The plaintiffs have not alleged that they approved of

---

    [2] The 2009 agreement separately identifies Berger & Montague and Billet & Connor, P.C., whereas the 2004 agreement described those organizations only in terms of the individuals associated with them, namely Marcus and Auerbach, and David Senoff, respectively.  Otherwise, the ACG's composition between 2004 and 2009 does not change.

the addition of anyone to the ACG.  Indeed, the plaintiffs'
contention that discovery is warranted as to arrangements between
the defendants and Hargrove runs contrary to their argument that
the 2004 agreement has force; if the 2004 agreement's provisions
on ACG membership apply, then Hargrove's membership in the ACG
would require an agreement between the defendants and the
plaintiffs, not the defendants and Hargrove.

Thus, even if the 2004 agreement continues to govern
the relationship between the plaintiffs and defendants, Hargrove
is still not a part of the ACG, and the plaintiffs are not
entitled to a portion of his fees.  The plaintiffs may not ground
a breach-of-contract claim on the failure to pay that amount.
Count I will therefore be dismissed.


    B.   Quantum Meruit Claim

The fact that the relationship between the parties is
governed by a written agreement forecloses any claim for unjust
enrichment.  See Hershey Foods Corp. V. Ralph Chapek, Inc., 828
F.2d 989, 999 (3d Cir. 1987) ("Where an express contract governs
the relationship of the parties, a party's recovery is limited to
the measure provided in the express contract."); see also Schott
v. Westinghouse Elec. Corp., 259 A.2d 443, 448 (Pa. 1969) ("[T]he
quasi-contractual doctrine of unjust enrichment [is] inapplicable
when the relationship between parties is founded on a written

-8-

agreement or express contract."). Claim II will be dismissed.

     C.   <u>Claim for an Accounting</u>

     The plaintiffs' claim for an accounting fails for a number of reasons. Under Pennsylvania law, the entitlement to an accounting may be legal or equitable; the complaint here does not state whether the plaintiffs' claim is in law or equity. <u>See</u> <u>Buczek v. First Nat. Bank of Mifflintown</u>, 531 A.2d 1122, 1123 (Pa. Super. Ct. 1987).

     An equitable accounting is improper unless there is a fiduciary relationship between the parties, fraud or misrepresentation is alleged, any accounts of the parties are mutual or complicated, or the plaintiff lacks an adequate remedy at law. <u>Id.</u> at 1124 (citing <u>Ebbert v. Plymouth Oil Co.</u>, 34 A.2d 493 (Pa. 1943)). The plaintiffs have not alleged the existence of any circumstances that would entitle them to an accounting in equity.

     Nor are the plaintiffs entitled to a legal accounting. In Pennsylvania, the right to an accounting at law is a form of relief that attaches only where the defendant has breached a valid contract with the plaintiff. <u>See</u> <u>Haft v. U.S. Steel Corp.</u>, 499 A.2d 676, 677-78 (Pa. Super. Ct. 1985). The plaintiffs have not adequately alleged a breach of their contract with the defendants regarding payment of fees, and do not point to any

other provision that would entitle them to an accounting.

Even if there were a basis in the parties' agreements to find a right to an accounting, the plaintiffs were provided one by Mr. Auerbach, and they do not dispute that the figures therein are correct as to the distributions made.  Mr. Auerbach also swore a declaration stating that the plaintiffs had received 22.5% of all fees paid to counsel other than the ACG and the plaintiffs--those identified in the 2009 agreement--as well as fees and interest.  The declaration also includes an exhibit, filed under seal, containing an e-mail he sent to the plaintiffs detailing the amounts paid to other counsel in connection with the MDL.  Defs.' Mot. Ex. B.[3]  The plaintiffs do not dispute the content of Mr. Auerbach's declaration or argue that the figures he states therein have been improperly calculated as to the portions paid to all counsel other than Hargrove.  See Tr. Hr'g 11-13.  These reasons all require dismissal of Count III of the complaint.

The plaintiffs have been paid in connection with their 2004 and 2009 agreements with the defendants and cannot state any claim that entitles them to recover any portion of fees paid to

---

[3] Because the plaintiffs' claim for an accounting relies in part upon an argument that the defendants' descriptions of fee disbursements have been inadequate, the e-mail may be considered by the Court in ruling on the defendants' motion.  See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196-97 (3d Cir. 1993).

Mr. Hargrove.  The plaintiffs are unable to allege facts that would permit them to state a viable claim against the defendants in the context, and so permitting amendment would be futile and the complaint will be dismissed with prejudice.  <u>See</u> <u>Philips v. County of Allegheny</u>, 515 F.3d 224, 245 (3d Cir. 2008).  Because the Court does so, the plaintiffs' cross-motion under Fed. R. Civ. P. 56(d) will be denied.