UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| GARY P. LIGHTMAN, et al, | ) | 12-CV-97-MAM |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JEROME M. MARCUS, et al, | ) | Philadelphia, PA |
| | ) | March 21, 2012 |
| Defendants. | ) | 9:34 a.m. |


TRANSCRIPT OF ORAL ARGUMENT
BEFORE THE HONORABLE MARY A. McLAUGHLIN
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Plaintiff:        GARY P. LIGHTMAN, ESQUIRE, Pro Se
                          LIGHTMAN, MANOCHI & CHRISTENSEN
                          1520 Locust Street - 12th Floor
                          Philadelphia, PA  19102

For the Defendant:        MARK B. SHEPPARD, ESQUIRE
                          MONTGOMERY, McCRACKEN, WALKER,
                             RHOADS, LLP
                          123 South Broad Street
                          Philadelphia, PA  19109




Audio Operator:           MILAHN HULL


Transcribed by:           DIANA DOMAN TRANSCRIBING
                          P.O. Box 129
                          Gibbsboro, New Jersey  08026-0129
                          Office:  (856) 435-7172
                          Fax:     (856) 435-7124
                          Email:   dianadoman@comcast.net


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

1                              I N D E X

2    ARGUMENT:                                    PAGE

3       By Mr. Lightman                         3, 18, 25

4       By Mr. Sheppard                        13, 23, 26

5

6

7

1                    (The following was heard in open court at 9:34 a.m.)

2                    THE CLERK:  All rise.  The court is now in session,

3          the Honorable Mary A. McLaughlin residing.

4                    THE COURT:  Good morning.

5                    MR. LIGHTMAN:  Good morning, Your Honor.

6                    MR SHEPPARD:  Good morning, Your Honor.

7                    THE COURT:  Please be seated.  All right.  Hello,

8          Mr. Lightman.

9                    MR. LIGHTMAN:  Good morning, Your Honor.

10                    THE COURT:  Mr. Lightman, what's going on?  Why

11         doesn't this contract that you've attached it settle it?  I

12         mean talk to me about your argument, sir.  I mean I'm looking

13         at it, and obviously I -- I know this -- this whole case

14         pretty well -- I mean this whole case being the case it

15         derives from.

16                    And, you know, it says all prior agreements are

17         superseded.  I'm not even sure we need to, but it does.  It

18         says to be allocated as follows, and then it, you know,

19         it's -- up above it says who belongs to the group that's at

20         issue.

21                    Why?

22                    MR. LIGHTMAN:  That's the --

23                    THE COURT:  I mean I hear you.  You know, you don't

24         think you got enough out of that litigation.  I can appreciate

25         it, but why doesn't this resolve --

1          MR. LIGHTMAN:  The problem, Your Honor, is if it

2     said this is who the affiliate class --

3          THE COURT:  Right.

4          MR. LIGHTMAN:  -- group is, I wouldn't be here.  But

5     we had this argument when we all met in Alan Markovitz'

6     office, and we -- at that time we agreed to disagree, Your

7     Honor.  They wanted to resolve it by excluding Hargrove from

8     the group.

9          THE COURT:  Right.

10         MR. LIGHTMAN:  I said, "No, you brought him in, and

11    in fact he replaced me, and this is supposed to be the case

12    that I learned" --

13         THE COURT:  But he didn't replace you.  I mean I

14    remember.  Mr. Hargrove had his own cases, didn't he?

15         MR. LIGHTMAN:  He had two or three cases in

16    Florida --

17         THE COURT:  Right.

18         MR. LIGHTMAN:  -- but I was supposed to be -- the

19    way that the --

20         THE COURT:  Uh-huh.

21         MR. LIGHTMAN:  -- the Berger, Montague group

22    explained it to me, their group and me or Mr. Manochi, or both

23    of us were supposed to be co-lead counsel.

24         THE COURT:  Right.

25         MR. LIGHTMAN:  And that's -- this is the case --

1   this was our first class action case, and this is what -- we

2   were supposed to use to Jerome Marcus and Jonathan Auerbach to

3   learn about class action cases.

4          And at -- when -- when we were in this courtroom and

5   there were like 50 attorneys here the first time the MDL met,

6   Mr. Marcus did his magic and brokered an agreement --

7          THE COURT:  Uh-huh.

8          MR. LIGHTMAN:  -- and we were approached in the back

9   of the courtroom, Your Honor, and we were told that they want

10  to bring Hargrove into the group, would I step aside and let

11  Hargrove and them be joint co-counsel instead of --

12         THE COURT:  Uh-huh.

13         MR. LIGHTMAN:  -- someone from Lightman and Manochi,

14  and then --

15         THE COURT:  Uh-huh.

16         MR. LIGHTMAN:  -- it wouldn't change our fee

17  agreement, and they said it would dramatically increase the

18  chances that Your Honor would appoint our group as the co-lead

19  counsel, and I -- I forget who the other competitor was.  All

20  I remember him being referred as an 800-pound gorilla.  I

21  can't remember his name off the top of --

22         THE COURT:  But, Mr. Lightman, but in '09 you signed

23  this agreement.

24         MR. LIGHTMAN:  Right.  And if you look, Your Honor,

25  it says the ACG includes.  It doesn't say, "This is the people

1    comprising the ACG," because we continued to disagree.  And

2    what we envisioned was we would let the case go forward.

3    There would be a pot of fees, and if we couldn't resolve it

4    amicably --

5                    THE COURT:  Right.

6                    MR. LIGHTMAN:  -- we reserved our right to --

7                    THE COURT:  Why didn't you say that?

8                    MR. LIGHTMAN:  -- bring this -- pardon me?

9                    THE COURT:  Why didn't you -- why didn't you say

10   that in this document?

11                   MR. LIGHTMAN:  It doesn't -- if Mr. Marcus and Mr.

12   Auerbach thought that this amendment precluded the issue, why

13   didn't they say the ACC group shall be composed of these

14   people?  It doesn't say that.  It includes, meaning --

15                   THE COURT:  Uh-huh.

16                   MR. LIGHTMAN:  It doesn't -- doesn't pre -- doesn't

17   preclude that there are others in the group.  And at that

18   meeting, Your Honor --

19                   THE COURT:  Uh-huh.

20                   MR. LIGHTMAN:  -- and we could take the deposition,

21   and during this case we'll take the deposition of Alan

22   Markovitz and Glenn Manochi.  They were there, too.  This very

23   argument went on.

24                   We refused to sign any agreement, and we told them

25   we were going to do what another group of attorneys -- we'd

1   file objections if we didn't get it resolved.  So we agreed to

2   disagree at that time.  That amendment to our original 204

3   [sic], 205 [sic] fee agreement did not resolve the question of

4   whether or not John Hargrove is or is not a member of their

5   group.

6          We had a discussion about it leading up to the

7   meeting in Alan's -- Alan Markovitz' office.

8          THE COURT:  Uh-huh.

9          MR. LIGHTMAN:  We continued to agree to disagree on

10  that point, Your Honor, and I respectfully submit that if you

11  look at the amendment, there's nowhere in there where it

12  resolves that question.  It's simply left open.  It was

13  unaddressed in the amendment, Judge.

14         THE COURT:  Uh-huh.  Now, let me ask you.  If I find

15  that this document is clear, then there would be no basis for

16  parol evidence or anybody's deposition, et cetera, would

17  there, Mr. Lightman, in terms of your 56D motion or your, you

18  know, your request for discovery?

19         MR. LIGHTMAN:  I think the document is clear, Judge.

20  It doesn't say --

21         THE COURT:  Well, no, but what I'm saying is if I

22  think it's clear the other way, there wouldn't be any basis to

23  do parol evidence, would there?

24         MR. LIGHTMAN:  Well, you say -- Your Honor would

25  have to make a determination that factually --

1           THE COURT:  No, no.  Just looking at the contract.

2    It's what I do every day.  You get a contract case and

3    somebody says, "Judge, the contract is clear.  I win."

4           If I agree -- I'm not saying I'm there yet.  I'm

5    just trying to understand your position.

6           If I agree that the contract is clear Mr. Sheppard's

7    way, there wouldn't be any basis -- in other words, parol

8    evidence wouldn't be relevant at that point --

9           MR. LIGHTMAN:  But that --

10          THE COURT:  -- would it?

11          MR. LIGHTMAN:  There's a factual question.  They --

12          THE COURT:  Which is?

13          MR. LIGHTMAN:  Which is whether or not this -- this

14   one-page agreement that's Exhibit B to the complaint --

15          THE COURT:  Uh-huh.

16          MR. LIGHTMAN:  -- that amends the prior agreement is

17   definitive on the point of what -- of resolving the factual

18   question.  The factual question in this case is, is Mr.

19   Hargrove part of the Affiliated Counsel Group.  That's --

20   that's what the factual question is.

21          THE COURT:  I understand.

22          MR. LIGHTMAN:  I respectfully submit that even a

23   clear reading of this Exhibit B doesn't resolve that question.

24          THE COURT:  Uh-huh.

25          MR. LIGHTMAN:  It says what the affiliate group is.

1          THE COURT:  Uh-huh.

2          MR. LIGHTMAN:  It says what it includes, and Mr.

3    Hargrove is not addressed one way or another in this group.

4          THE COURT:  Uh-huh.

5          MR. LIGHTMAN:  And anybody they brought into their

6    group doesn't have to sign this agreement and be bound by it,

7    either in the first agreement or this amendment.  So the --

8    even looking at this agreement, the factual question remains,

9    is Hargrove a part of the Affiliated Counsel Group or not.

10         THE COURT:  All right.  I  -- I think I know what

11   your answer is, but on this accounting issue -- first of all,

12   I'm not -- what's the legal basis for an accounting, first of

13   all, but, secondly, didn't you -- did you get this letter that

14   Mr. Sheppard attached or this email, whatever it is?

15         MR. LIGHTMAN:  We've gotten an email from -- I think

16   it was Mr. Auerbach who sent it, but we didn't get any of the

17   underlying account documentation.  We didn't get any of the

18   checks to support it.

19         And if we learn in discovery that they did to Mr.

20   Hargrove what they did to the other people, that after they

21   calculated the lodestar and everything, they deducted 20

22   percent from the fee that they paid out of this fund to each

23   member of the group, then, Your Honor, six months from now

24   we're going to be in front of you on a motion for summary

25   judgment because I suspect that there are documents between

1    Berger -- excuse me, between Marcus & Auerbach on the one hand
2    and Hargrove on the other hand that deal with whether or not
3    they're part of the Affiliated Group, that deal with whether
4    or not Mr. Hargrove is obligated to pay a referral fee, and I
5    suspect that they treated every one of the attorneys
6    similarly.

7            They took Mr. Senoff's fee.  They deducted the 20
8    percent out of that fee to pay to our group.  And if they did
9    the same thing for Mr. Hargrove, Your Honor, we're going to be
10   back here on a motion for summary judgment the other way.

11           But we haven't even had the opportunity to get the
12   documentation from them.  We were promised it at one point.
13   We were promised a mediation at one point.  They then turned
14   around and thought they would gain some advantage before Your
15   Honor in this court and said, "Go ahead and sue us."

16           But I respectfully submit we should be at least
17   entitled to explore that aspect of it, and I respectfully
18   submit, as we suspect, the documents between Messrs. Auerbach
19   and Marcus on the one hand and Hargrove on the other hand, as
20   well as the documents showing how the fee that that was
21   calculated, that was paid to Mr. Hargrove, will show and prove
22   conclusively that they didn't keep their part of the --
23           THE COURT:  Okay.  Let me ask you.  If the
24   Affiliated Group -- if I conclude that the Affiliated Group,
25   or if I don't conclude but discovery shows that the Affiliated

Counsel Group includes only Berger & Montague, Senoff, Billet
& Connor and Jacob Goldberg, does this accounting -- I'm going
in accounting -- does this email that's attached to Mr.
Sheppard's paper, does this accurately state what you got?

In other words, are you complaining that you didn't
get what you should have gotten under the contract as read by
Mr. Sheppard?

MR. LIGHTMAN:  I don't know the answer to that
'cause we never saw anything other than the email saying this
is what --

THE COURT:  But does -- sir, my question is under
the email -- if you look at the email, did they calculate it
properly?  Assuming they're not lying to you, and I have --
why would you think -- I have no -- you have no basis to think
this is a lie.

In other words, if this is an accurate rendition of
monies, did you get what you were entitled to under the
reading of the contract by Mr. Sheppard?

MR. LIGHTMAN:  I don't know the answer to that
question, Judge, 'cause all I have is an email.  When I said
to --

THE COURT:  I -- that's what I'm asking.

MR. LIGHTMAN:  When I said to Mr. Auerbach, "Can I
see the underlying checks, can I see the accounting to support
your statement" --

1             THE COURT:  I understand.

2             MR. LIGHTMAN:  -- "that this is what it is" --

3             THE COURT:  Yeah.

4             MR. LIGHTMAN:  -- he refused to give it to me.

5             THE COURT:  Mr. Lightman, I completely understand

6       that point, but you're not answering my question, sir.  Come

7       on.

8             I can do the math myself, and I'll do it, but I'm

9       asking you.  I want to understand your case.

10            MR. LIGHTMAN:  Assuming his figures are correct and

11      there's --

12            THE COURT:  Yeah.

13            MR. LIGHTMAN:  -- and they're backed up by the

14      actual distributions made --

15            THE COURT:  Yeah.

16            MR. LIGHTMAN:  -- from the fund, then I would say

17      that he -- his calculations should -- appear to be accurate.

18      But, again, I asked for the documentation to support what he

19      said in is email where the distributions mean --

20            THE COURT:  Uh-huh.

21            MR. LIGHTMAN:  -- and how he calculated them --

22            THE COURT:  Right.

23            MR. LIGHTMAN:  -- and he did not give them to me.

24            THE COURT:  Okay.

25            MR. LIGHTMAN:  I know for a -- I know --

Defendant - Argument                                    13

1            THE COURT:  Yeah.

2            MR. LIGHTMAN:  -- I went to Mr. Senoff --

3            THE COURT:  Uh-huh.

4            MR. LIGHTMAN:  -- and Mr. Senoff actually told me

5     how his fee was calculated.

6            THE COURT:  Uh-huh.

7            MR. LIGHTMAN:  And I went to Mr. Goldberg, and Mr.

8     Goldberg told me how his fee was calculated.

9            THE COURT:  Right.

10           MR. LIGHTMAN:  Mr. Marcus refused to give me the

11    underlying documentation showing that, and Mr. Hargrove, I've

12    not -- I've not gotten any documentation from him.

13           THE COURT:  Okay.  Okay.

14           All right.  Mr. Sheppard, why don't you respond to

15    all that, but why don't you start, though, by telling me --

16    putting aside legal basis, why doesn't Mr. Marcus, Mr.

17    Auerbach give him the underlying data for this email, at least

18    that?

19           MR SHEPPARD:  Well, Your Honor, as the Court pointed

20    out, we believe that we have provided Mr. Lightman with --

21    with all the information he needs.

22           If Your Honor looks at the -- at the second

23    agreement, the -- the Exhibit B to plaintiff's complaint, that

24    actually supersedes the entire lodestar calculation and

25    everything else --

1          THE COURT:  Right.

2          MR SHEPPARD:  -- that went into the first agreement.

3          THE COURT:  Yeah.

4          MR SHEPPARD:  And they're -- just from the math,

5    Your Honor, on its face it's very clear to us that Mr.

6    Lightman got exactly the 22.5 percent

7          If he wants some affirmance that Mr. Hargrove

8    received a certain amount of money, which, again, is laid out

9    in the email, if he wants to see that check, Your Honor, I

10   don't think we'd have any problem giving that to him.

11         THE COURT:  So what did -- so the -- I know this is

12   under seal so I won't go into it, but I see there they -- the

13   number that Hargrove, Pearson & Brown got, right?

14         MR SHEPPARD:  That's correct, Your Honor.

15         THE COURT:  Okay.  And that's where you're getting

16   what you believe you should have gotten, this 900 and some

17   thousand, Mr. Lightman?

18         MR. LIGHTMAN:  It would be based upon the number

19   that they recorded in that email.

20         THE COURT:  Uh-huh.

21         MR SHEPPARD:  And, Your Honor, that's the only

22   deduction from the -- from the fee award that this Court

23   approved --

24         THE COURT:  Oh, okay.

25         MR SHEPPARD:  -- in the class action --

 1              THE COURT:  You're right.  It's a gross, isn't it.

 2      Yeah, it's a 22 percent of the gross.

 3              MR SHEPPARD:  And -- and Your Honor is --

 4              THE COURT:  I mean -- yeah, 22 percent.

 5              MR SHEPPARD:  Right.  As Mr. Lightman pointed out,

 6      he's received information from the other members of the ACG as

 7      to how their fees were calculated.  He's never questioned

 8      that.

 9              THE COURT:  Uh-huh.

10              MR SHEPPARD:  I don't know what more information he

11      would need.

12              Your Honor, it -- it appears to the defendants here

13      that Mr. Lightman's claim essentially is that he's due a -- a

14      referral fee from Mr. Hargrove.  There is nothing in these

15      documents that says he has a right to that referral fee.  He

16      hasn't sued Mr. Hargrove.

17              He is asking the defendants to essentially pay Mr.

18      Hargrove's referral fee, and there's no basis in these

19      agreements for that.

20              Your Honor's questions, I thought were -- were right

21      on point.  With regard to the parol evidence issue, Your

22      Honor, I have two points.  Number one, the contracts are

23      clear, and as the Court has -- has pointed out in the cases

24      we've cited in our papers, I think the KDH Electronics case

25      recently, where -- where the contract is clear and there --

1    there is language that evidences the parties' intent that this

2    was a full and integrated agreement and no parol evidence is

3    necessary, and -- and in fact is inadmissible.

4         So any discovery that Mr. Lightman is seeking to do

5    here would run straight into the parol evidence rule and would

6    be an exercise in futility.

7         Mr. Lightman references deposition testimony from

8    two other witnesses, yet we have no affidavits here.  He had

9    the opportunity under Rule 56 to attach those affidavits.  He

10   has not done so.  Instead, we have his affidavit where he has

11   attempted to create an ambiguity in a contract that frankly

12   does not exist.

13        As -- as we argued in our papers, Your Honor, the --

14   the clear rules of contract construction that we cited,

15   including the enumeration of exactly who was in the ACG and

16   the fact that that also excludes who was not, the fact that

17   Mr. Lightman's interpretation of this contract would require

18   the Court to essentially read out of this agreement the entire

19   category of all other lawyers, and if you look at the language

20   of Exhibit B, Your Honor, where his 22.5 percent is -- is to

21   be calculated, it clearly says it is 22.5 percent of the gross

22   fee after all other attorneys in the case have been paid,

23   other than the LMC and the Affiliated Counsel Group.

24        If Mr. Lightman's argument is accepted, Your Honor,

25   then we have to ignore those plain terms.  It's important to

Defendant - Argument                    17

1   remember, Your Honor, that -- that these contracts were

2   negotiated among and between lawyers.  They were negotiated

3   obviously very carefully.

4          If you look at the first agreement, Your Honor,

5   there is very little that was left to the imagination.  The

6   details are all in there.  They're explicit.  They're express.

7          Your Honor, I believe the Court is bound by the

8   plain terms.  They are the best evidence of the intent of the

9   parties here, and -- and given those -- the plain language of

10  these agreements, Mr. Lightman has simply failed to state a

11  plausible claim for breach of contract.

12         Your Honor didn't address the quantum meruit claim,

13  but I think Mr. Lightman will probably agree with me that

14  if -- as he concedes, the contract governs the rights of the

15  parties here, there can be no equitable claim.

16         And with regard to Your Honor's questions regarding

17  the accounting, I believe I addressed those, but, again,

18  there's no independent basis in this agreement to allow him to

19  receive the accounting.  In any event, Your Honor, we believe

20  he's got what he's entitled to.

21         Thank you.

22         THE COURT:  Mr. Lightman, what about the fact

23  that -- Mr. Hargrove's not a defendant here.  You want Mr.

24  Marcus and Mr. Auerbach to give you 22 percent of the money

25  Mr. Hargrove got?

1          MR. LIGHTMAN:  Mr. Marcus and Mr. Auerbach

2     controlled the allocation of fees.  I don't have to sue Mr.

3     Senoff.  I don't have to sue Mr. Goldberg.  Mr. Marcus and Mr.

4     Auerbach are the ones that controlled the pot of money and who

5     got what out of the pot of money.

6          Number two, this agreement, this one-page agreement,

7     Exhibit B, doesn't supersede the entire agreement, Exhibit A.

8     If you look at paragraph one -- paragraph one, "All prior

9     agreements among them and any other party relating to the

10    conduct of litigation or the allocation of fees are

11    superseded."

12         THE COURT:  Uh-huh.

13         MR. LIGHTMAN:  That doesn't supersede the other

14    parts of the agreement, including footnote one of Exhibit A,

15    which defines how the group is defined in the first place.

16    And their group is defined to include LMC, Markovitz, ACG,

17    plus any additional firms that ACG and LMC jointly elects to

18    include in the joint prosecution of the fee.

19         And if you go on and look at this, they have the

20    right to bring other people into their group, but they have --

21    it doesn't change what we get, and if they bring an attorney

22    like Hargrove into their group, then we still get the 20 --

23    22.5 percent of his fee, which is what it ended up to be.

24         So I respectfully submit that we have stated a claim

25    under our complaint, that you have to read these two contracts

1    in conjunction with this other.  This does not -- the second

2    one, the one-page amendment, does not contain an integration

3    clause.  It doesn't fully supersede the entire agreement.  It

4    only supersedes the -- since there was no dispute as to us

5    being pushed aside and letting Hargrove come in or the

6    allocation of what the fees were, that's all put aside, but

7    the basic core issue remain, who was part of their affiliated

8    counsel group.  That was the initial group and anybody they

9    elected to bring in.

10          And contrary to what they say, anybody they brought

11   into the group didn't have to sign on and become part of it.

12   All they had to do, the original Affiliated Counsel Group had

13   to do, was agree that they would pay 20 percent of their fee,

14   and --

15          THE COURT:  But let me understand that.  Your --

16   your view is you're looking for 22.5 percent of the gross fee,

17   not whatever the fee arrangement was in Exhibit -- the first

18   exhibit which I haven't even looked at what the fee

19   arrangement was there.

20          MR. LIGHTMAN:  Actually, the fee arrangement was

21   based upon floors and sliding scales and contemplated future

22   class actions.

23          THE COURT:  Right.  Well, you're saying that's no

24   longer.  You -- you want 22.5 percent of the gross.

25          MR. LIGHTMAN:  What happened was, because there were

1    no other class actions --

2                THE COURT:  Right.

3                MR. LIGHTMAN:  -- brought and because this was the

4    only -- eventually --

5                THE COURT:  Right.

6                MR. LIGHTMAN:  -- morphed into the only one that was

7    there, we agreed on a flat 22.5 percent of the fees paid to

8    their group.

9                THE COURT:  Of the gross fee.

10                MR. LIGHTMAN:  So the question --

11                THE COURT:  So you want that.  You like that part of

12    this contract, I take it.

13                MR. LIGHTMAN:  That was the -- actually, I liked the

14    first contract better 'cause when they came to us, they said,

15    "We're Berger & Montague.  We have the ability -- you gave us

16    this one on a silver platter, but there's other annuity groups

17    out there that were -- that were defrauding senior citizens,"

18    and we thought they would devote their resources, and we had

19    what they called second wave class actions, which they --

20    which we expected them to bring against other annuity

21    companies that we identified in our initial investigation that

22    we're doing the same thing.

23                Those never came to fruition because, unbeknownst to

24    us, at the time Messrs. Auerbach and Marcus used us as a

25    vehicle to exit Berger & Montague.

1          THE COURT:  Oh.

2          MR. LIGHTMAN:  So --

3          THE COURT:  I understand.

4          MR. LIGHTMAN:  I'm look -- we would liked to have

5     had them do the first fee agreement, which was bring all these

6     other class actions, get 25 percent of this class action, 20

7     percent of the second wave class action.  When that never came

8     to fruition, we agreed at this meeting -- the only thing we

9     really agreed upon was instead of arguing over that, we would

10    agree to take a flat 22.5 percent.

11         But there was an existing controversy that still has

12    not been resolved as to who comprised their group, and I

13    respectfully submit it's not answered by either the first

14    agreement or the second amendment.  It's a fact question.

15         If Hargrove is part of their affiliated group

16    factually, then they owe us 22.5 percent of --

17         THE COURT:  Uh-huh.

18         MR. LIGHTMAN:  -- the fee that was paid to Mr.

19    Hargrove.  And they can pay it themselves and have a claim

20    against him, or they can ask Mr. Hargrove to pay it, and I

21    suspect the documentation will show that they actually took

22    the 20 percent out of his fee but never paid, but, again, I

23    don't have the -- I don't have the documentation.

24         THE COURT:  Yeah, what basis do you have to say

25    that?  That they took 22.5 percent of Mr. Hargrove's fee, that

1    email is a lie?

2              MR. LIGHTMAN:  I -- no.  I have a feeling that the

3    net -- I --

4              THE COURT:  Uh-huh.

5              MR. LIGHTMAN:  I -- just a suspicion I harbored

6    because why else won't they give us the underlying

7    documentation?  If what Mr. Auerbach says in his email is

8    true, why hold back the underlying checks and the

9    documentation, Judge?  It doesn't make sense.

10             THE COURT:  Because they don't think you're

11   entitled, and you're all mad at each other.

12             MR. LIGHTMAN:  But, Judge --

13             THE COURT:  I know Jerome Marcus and --

14             MR. LIGHTMAN:  -- show me I'm wrong, and I'll go

15   quietly in the night.

16             THE COURT:  Wrong in what sense?

17             MR. LIGHTMAN:  Show me that the -- the calculation

18   of their fees --

19             THE COURT:  Right.

20             MR. LIGHTMAN:  -- and all the emails between them

21   never mentioned that Hargrove had to pay a 20 percent fee

22   and -- and show me that they never considered him part of the

23   Affiliated Group, and I'll go quietly.

24             THE COURT:  What does that mean?  How did they

25   determine that?

Defendant - Argument                                        23

1          Why not show him the numbers for that purpose, Mr.

2     Sheppard?  He says he'll go away, even if you win this motion,

3     he might appeal, so why not just show him that Mr. Hargrove

4     got what it says he got, and then he didn't -- and they didn't

5     take Mr. Lightman's 22.5 percent off of it.

6          MR SHEPPARD:  Well, Your Honor, I think -- first,

7     let me just, if I may --

8          THE COURT:  Yeah.

9          MR SHEPPARD:  -- back up a step.  I -- my clients

10    have attempted to take the high road here.  You know, in

11    essence, Mr. Lightman'ss accusing them of committing some kind

12    of mail fraud, and, you know, frankly, that's outrageous.

13         Given the fact that he also sued Berger & Montague

14    in this case where he clearly had no basis, and -- and in fact

15    threatened that he was going to sue Berger & Montague in an

16    effort to -- I hate to use the word "extort," but to leverage

17    that fact in an effort to get my clients to reach some kind of

18    settlement tells you exactly all you need to know about why

19    Mr. Lightman wants to now go fishing through my client's

20    records that he has no entitlement to.

21         Your Honor, I don't know factually what exactly went

22    on between Mr. Hargrove and Marcus & Auerbach, but what I do

23    know, Your Honor, is that this agreement that Mr. Lightman

24    signed, whether he liked it or not, the 2009 agreement that he

25    signed doesn't have anything to do with the fees of Mr.

1    Hargrove, and it doesn't have anything to do with whether or

2    not Mr. Hargrove and Messrs. Marcus and Auerbach had any other

3    arrangement.

4           What the agreement said, Your Honor -- and I believe

5    we're in agreement on the fact that these two documents should

6    be read in pari materia.  I agree with that.  What these

7    documents say, Your Honor, is they define who is required to

8    pay a referral fee to Mr. Lightman.  They define the

9    Affiliated Counsel Group quite clearly.  They define the

10   mechanism which Mr. Lightman pointed out to Your Honor in

11   footnote one on exactly who and how people will be added to

12   the Affiliated Counsel Group.  It required, Your Honor, an

13   agreement of both parties.

14          It required the following of -- of an express way to

15   do it.  It is not disputed that it was never done.  In fact,

16   Mr. Lightman says that it was specifically not done and

17   intentionally not done.

18          Mr. Lightman's argument, Your Honor, ignores the

19   plain language of the document, and Your -- if Your Honor were

20   inclined to allow discovery here on the basis of what clearly

21   appears to us to be a post hoc contrivance -- it's not pled in

22   his complaint, it only comes up in response to our motions to

23   dismiss, Your Honor's taking Rule 56 beyond anything that it

24   was ever intended to do.

25          Certainly, plaintiff is entitled to do discovery if

1     there are truly factual issues here.  This Court doesn't need

2     to reach the questions that Mr. Lightman raises because Mr.

3     Lightman's contract, which he is suing on, does not entitle

4     him to a referral fee from Mr. Hargrove.

5               THE COURT:  Anything further --

6               MR. LIGHTMAN:  Can I just say one thing?

7               THE COURT:  -- Mr. Lightman?  Sure.

8               MR. LIGHTMAN:  Mr. Sheppard said that I've extorted

9     or threatened to sue Berger & Montague.  I continually said to

10    Messrs, Marcus and Auerbach, "How much did you pay the Berger

11    & Montague law firm?  You were with them when we first

12    started.  In your fee and application you used them as a

13    lodestar," and they said, "We're not telling you."

14              I said, "That's going to force me to sue Berger &

15    Montague."

16              THE COURT:  Uh-huh,

17              MR. LIGHTMAN:  And they purposely didn't tell me

18    that.  I had to sue Berger & Montague.  I got Laddie Montague

19    involved in the case, and he showed me the agreement that was

20    reached between Berger & Montague and Messrs. Marcus and

21    Auerbach when they left that specifically said Messrs. Marcus

22    and Auerbach didn't have to pay them anything.  They confirmed

23    for me in writing that they didn't get any fee from here,

24    which is why I -- I let them out of the lawsuit.

25              Had they -- had Messrs. Marcus and Auerbach been up

Defendant - Argument                                    26

1   front with me, right up front and said, "When we left them, we

2   took this case with us, and we didn't have to pay them

3   anything, we didn't pay them anything," they wouldn't have

4   been named a defendant, but they led me down the path to sue

5   them --

6                    THE COURT:  Uh-huh,

7                    MR. LIGHTMAN:   -- and Mr. Montague did the right

8   thing by making the written disclosures to me necessary, and I

9   did the right thing there to dismiss him from the case.

10                   But, Your Honor, this fee agreement doesn't say the

11  Affiliated Counsel Group is comprised of these individuals.

12  It doesn't say this Affiliated Counsel Group includes these

13  individuals and these lawyers and no others.

14                   It says "includes," and when something includes

15  these people, it doesn't preclude other people from there, and

16  it doesn't exclude other people --

17                   THE COURT:  Uh-huh.

18                   MR. LIGHTMAN:   -- from there.  You have a factual

19  question, and I respectfully submit I -- let me have the

20  discovery that we're asking for, and I'll be back here in six

21  months on a motion for summary judgment the other way, Your

22  Honor.

23                   THE COURT:  Uh-huh.  Okay.  Thank you.

24                   Anything else, Mr. Sheppard?

25                   MR SHEPPARD:  Your Honor, let me just briefly

Defendant - Argument                                    27

1   respond, and I -- I don't think it does anyone any good to get

2   into a who struck John, but I was involved back in September

3   in this matter, and I, you know, specifically told Mr.

4   Lightman that Berger & Montague didn't receive any portion of

5   these fees.

6           The problem, again, Your Honor, is, is that Mr.

7   Lightman keeps running headlong into his own contract, and

8   what is clear from that contract, no matter what was paid to

9   Berger and what was not paid to Berger was coming out of my

10  client's pocket and had no impact whatsoever on Mr. Lightman's

11  fee.

12          So his entitlement to that information is specious,

13  at best, and his -- and his naming of Berger in this lawsuit I

14  think is very clear as to what those motives were.

15          Thank you.

16          THE COURT:  All right.  Thanks, everybody.  Let me

17  go back, and obviously review everything again and think some

18  more about it.  But thank you very much for coming in.

19          We're adjourned.

20          THE CLERK:  All rise.

21          MR. LIGHTMAN:  Thank you, Your Honor.

22          MR SHEPPARD:  Thank you, Your Honor.

23          (Proceedings concluded at 9:59 a.m.)

24                          *  *  *  *  *

1        C E R T I F I C A T I O N

2

3

4            I, Tara Martin, court-approved transcriber, certify

5    that the foregoing is a correct transcript from the official

6    electronic sound recording of the proceedings in the above-

7    entitled matter.

8

9

10

11    _____        _____

12    TARA MARTIN                          DATE

13    DIANA DOMAN TRANSCRIBING